UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANITA WRIGHT, | } |
| | } |
| Plaintiff, | } |
| VS. | } CIVIL ACTION NO. H-08-2651 |
| | } |
| CITY OF HOUSTON, | } |
| | } |
| Defendant. | } |

## OPINION & ORDER

Pending before this Court is the City of Houston ("the City")'s Motion to Dismiss (Doc. 6), and the response and reply thereto. For the reasons explained below, the Court GRANTS-IN-PART and DENIES-IN-PART the motion.

**I.     Background & Relevant Facts.**

Plaintiff Anita Wright ("Wright") is a black female Sergeant in the Houston Police Department who has served for 25 years. She alleges that the City of Houston "acting by and through its agents and employees" including Captain S. Craig Goralski and Lieutenant Octavio Pando discriminated against Wright because of her age, sex, color and race. Thus, Wright brings causes of action for violations of Title VII of the Civil Rights Act, 42 USC section 2000e *et seq.*, and 42 USC section 623 *et seq.*, as well as violations of 42 USC 1983 and 1981.

The City no longer seeks dismissal of Wright's Title VII claims. Hence this issue is moot and subject to denial. The only issue before the Court is the City's argument that Wright failed to allege that her §1983 and §1981 claims are the result of a "custom or policy" of the municipality being sued as required by *Monell v. Dep't Of Social Sciences*, 436 U.S. 658, 694 (1978).

In her First Amended Complaint, Wright alleges the following constitute a "custom or policy" of the City:

> Defendant attempted to force Plaintiff out of her assignment as sergeant over the [Defensive Tactics Unit] by, among other things, establishing new standard operating procedures pertaining to the physical agility qualifications required for the Plaintiff's position with [the Houston Police Department.]

Plaintiff's First Amended Complaint, *See* Doc. 9 at 4.

> Plaintiff reported her concerns about her supervisors' treatment of her and her unit to [Houston Police Department] Chief Hurtt. Thereafter, she was repeatedly chastised, oppressed, and retaliated against for speaking to Chief Hurtt.

Doc. 9 at 5.

> Plaintiff further contends that Defendant instituted a campaign of retaliation against the Plaintiff which included, among other things, the filing of IAD complaints against Plaintiff, the refusal to investigate the Plaintiff's own IAD complaint, and the temporary suspension of the Plaintiff from her employment in January of 2007.

Doc. 9 at 8.

## II.     Legal Standard on Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted). A plaintiff must allege enough facts to state a claim to relief that is "plausible" on its face. *Id.* at 1974. However, a Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). Therefore, the complaint must be liberally

construed in favor of the plaintiff, all reasonable inferences are to be drawn in favor of the plaintiff's claims, and all factual allegations pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).  Nevertheless, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).  In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

### III.    Analysis

Under the decisions of the Supreme Court and the Fifth Circuit, municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694.  *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading. *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th. Cir. 1984); *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989). The three attribution principles identified here - a policymaker, an official policy and the "moving force" of the policy - are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.

As the City points out, in this case Wright fails to identify a policymaker responsible for the alleged customs or policies at issue. The Fifth Circuit's seminal decision on municipal section 1983 liability emphasized that:

> Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc). *Webster* identified the Mayor, City Council and Chief of Police as Houston's presumptive policymakers for the police, and stated that without proof, it was inconceivable that any officers subordinate to the Chief "even possibly could have occupied the role of a city policymaker." *Webster*, 735 F.2d at 842. Wright's First Amended Complaint is bereft of sufficient specificity as regards which policymakers instituted the allegedly violative customs or policies of the City. She does not allege that the Chief of Police, Hurtt, nor the Mayor nor City Council played any role, nor does she make an allegation that she will offer proof that others could have played that role. Thus, with regards to the physical agility test by which the City allegedly "attempted" to disqualify her from her current position, the Court is left in the dark as to which policy maker, if any, caused the test to be applied. With regards to her complaints to Hurtt, it appears from the First Amended Complaint that Wright's immediate supervisors discouraged her from complaining again to Hurtt, not that Hurtt himself took any action. Lastly, as to the claim that the City instituted a "campaign of retaliation" against those taking the actions she complains of, *i.e.* a) ignoring her complaints, b) lodging complaints against her, and c) temporarily suspending her, remain unknown actors, and considering the nature of the actions, also separate actors.

Furthermore, and of more import to the lack of merit of her claims, as the City points out, none of the actions of which Wright complains amount to such an organized pattern

with a causal connection to constitutional violations as to merit redress under §1983. "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Bennett v. City of Slidell*, 728 F.2d at 768 n.3. A customary municipal policy cannot ordinarily be inferred from single constitutional violations. *See, e.g.*, *Webster*, 735 F.2d at 851. Wright alleges constitutional violations solely as applied to her. For example, it is possible to assume that the physical agility test may have discriminated on the basis of age even though facially neutral in application, but the issue is not raised because Wright indicates that the test was a specific attempt to displace her as Sergeant for the Defensive Tactics Unit and nobody else. Being subjected to a "code of silence" by her immediate supervisors is also an isolated incident. Wright does not allege others were shut off from access to the Chief of Police. As for her IAD complaints, it would be a custom or policy if IAD systematically ignored complaints of blacks, females, or on the basis of age and systematically considered complaints against these groups. Wright, however, alleges only an isolated incident as to her. The same applies to her temporary suspension.

The City as a municipality cannot be held liable for isolated incidents committed by its agents without its direction or implicit ratification. That is all, however, that Wright attempts to bring as a § 1983 cause of action. Therefore, the Court concludes that Wright's §1981 and §1983 claims will be dismissed.

### III. Conclusion.

Accordingly, it is hereby ORDERED that the City's Motion to Dismiss (Doc. 6) is GRANTED with regards to §1983 and §1981 claims; and DENIED-AS-MOOT as to the Title VII claims.

SIGNED at Houston, Texas, this 7th day of August, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE